AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Verizon Wireless - Account (408) 599-4555<br>180 Washington Valley Road,<br>Bedminster, New Jersey 07921 | )<br>)<br>)<br>)  Case No.  **19MJ5553**<br>)<br>)<br>) |

FILED
DEC 1 3 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Rainier Mendoza, Homeland Security Investigations

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

S.A. Rainier Mendoza, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **12/13/19**

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Rainier Mendoza, being duly sworn, hereby state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for information associated with the phone number (408) 599-4555 (the "Account"), including subscriber information, telephone toll data and cell-site geo-location information for the period of January 11, 2019 up to and including February 11, 2019. As set forth below, probable cause exists to believe the Account contains evidence of violations of federal law, namely, importation of controlled substances and conspiracy to import controlled substances, in violation of 21 U.S.C. §§ 952 and 960, as described in Attachment B.

2.      The data associated with the Account is currently in the possession of Verizon Wireless ("Verizon"), headquartered at 180 Washington Valley Road, Bedminister, New Jersey 07921. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review the information to locate items described in Attachment B. This Court has jurisdiction to issue this warrant because it is "a district court of the United States (including a magistrate judge of such a court)" that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A), 2711(3)(A).

### TRAINING AND EXPERIENCE

3.      I am a Special Agent employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been employed as a special agent since December 2016. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. During my experience in law enforcement, I have had training in investigating the unlawful importation, possession, and distribution of controlled substances. My experience includes many arrests, searches, and interviews. I have also

worked and consulted with many law enforcement officers experienced in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

4.      I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.  I have participated in criminal investigations involving, among other things, the illegal smuggling of narcotics into the United States, and I have received formal training in the laws and regulations relating to such investigations including 21 USC §§ 952 and 960, Importation of a Controlled Substance.  My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

5.      From July 2008 until December 2016, I was a Border Patrol Agent employed by the United States Border Patrol, which is a component of Customs and Border Protection (CBP), under the Department of Homeland Security. As a Border Patrol Agent, I was assigned to the Campo Station, in Pine Valley, California, where I participated in investigations into suspected drug smuggling, questioned suspects and witnesses, and conducted vehicle searches related to suspected drug smuggling.

6.      I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants.  I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

7.      My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including methamphetamine, and the investigation of persons in possession of narcotics for purposes of sales and

transportation. In addition, I speak with other narcotics investigators regarding the manner in which sellers of narcotics store, transport and sell narcotics. I also regularly extract and analyze mobile devices and other digital evidence associated with narcotic investigations.

8.     In the course of my duties, I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks.

9.     Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

10.     The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited

3

1    purpose of establishing probable cause in support of the application for a search warrant,

2    it does not set forth each and every fact that I or others have learned during the course of

3    this investigation. Dates, times, and amounts are approximate.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

5        10.    On February 11, 2019, at approximately 10:55 a.m., Antonio Velasco-Esparza

6    ("Velasco"), a United States Citizen, applied for admission to the United States at the Otay

7    Mesa, California Port of Entry. Velasco was the driver, registered owner, and sole occupant

8    of a 2012 Jeep Cherokee bearing California license plate 8DLV206 (the "Vehicle").

9        11.    As the Vehicle passed through the pre-primary inspection area, a Human

10   Detection Narcotic Detector Dog alerted to the undercarriage of the Vehicle. Customs and

11   Border Protection Officer ("CBPO") Falero noticed what appeared to be tampering with

12   the gas tank straps and screws and the gas tank hit solid. As CBPO Falero was inspecting

13   the Vehicle, CBPO Franco asked Velasco if the vehicle belonged to him and if he was

14   responsible for all of its contents. Velasco responded that the Vehicle was his and that he

15   was responsible for all of its contents. The Vehicle was sent to secondary inspection.

16       12.    In the secondary inspection area, a Z-portal X-ray revealed anomalies in the

17   gas tank. Upon further inspection and removal of the gas tank, 26 packages were found in

18   the gas tank of the Vehicle. The 26 packages, weighing approximately 27.50 kilograms,

19   tested positive for properties of methamphetamine at the time of arrest, and subsequent lab

20   reports confirmed that the 26 packages contained 25.74 kilograms of methamphetamine

21   (actual). Velasco was placed under arrest.

22       13.    Officers seized a cell phone incident to Velasco's arrest. During post-arrest

23   booking, Velasco claimed ownership of the Account ((408) 599-4555). Velasco further

24   told agents that he was a resident of San Jose, California, not San Diego, California as he

25   had told Customs and Border Protection agents in pre-primary inspection while attempting

26

27

28

4

to enter the United States.[1] As part of my investigation, I ran searches for the Account in CLEAR, a law enforcement research database, which identified Verizon as the Account's service provider.

14.   On February 12, 2019, a complaint was filed charging Velasco with Importation of Methamphetamine in violation of Title 21, United States Code, Sections 952 and 960. On March 12, 2019, Velasco waived Indictment and was charged by Information with one count of violating Title 21, United States Code, Sections 952 and 960, in the Southern District of California in case number 19-CR-0838-GPC.

15.   As part of my investigation, I obtained the California Department of Motor Vehicle's certified records for Velasco and the Vehicle. The Vehicle was transferred to Velasco on or about January 25, 2019, and the California DMV issued a registration card to Velasco on January 30, 2019. At the time of arrest, Velasco was in possession of a California vehicle registration card, with an issue date of January 30, 2019, to 1745 Duval Street, San Diego, CA 92102. I spoke with the residents of that address, who stated that they did not know Velasco and did not know the Vehicle. Based on my training and experience, I am aware that drug smugglers often register vehicles to border cities (e.g., San Diego) to avoid suspicion when applying for entry into the United States. During my post-arrest booking questions, Velasco admitted that he actually lives in San Jose, California, not San Diego, California.

16.   Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe Velasco, and other co-conspirators were engaged in a conspiracy to smuggle narcotics into the United States from Mexico. I also believe the co-conspirators, including Velasco, used cellular phones to communicate and coordinate the importation of narcotics, including obtaining and registering the Vehicle. I believe the information regarding phone numbers Velasco was in contact with during the

---

[1]   After responding to booking questions, Velasco admitted that he was paid $6,000 to cross the Vehicle through the U.S.-Mexico border but denied knowledge of the narcotics in his Vehicle.

1    relevant period of time may reveal other accomplices and co-conspirators engaged in

2    narcotics smuggling.  Additionally, I believe that historical geolocation data from the

3    Account Velasco used may identify travel to or locations involved in the importation of

4    methamphetamine or other federally controlled substances, such as delivery points, stash

5    houses, or load houses.

6         17.    Based on my training and experience, and my consultation with other law

7    enforcement officers, I am aware that Verizon routinely collects and stores data for the

8    electronic communication accounts to which it and other providers issue telephone

9    numbers.  The data includes: (i) subscribers' contact and billing information; (ii) detailed

10   information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed

11   information concerning subscribers' outgoing direct calls, text message, and SMS

12   messages; and (iv) detailed information concerning cell-site geo-location data.

13        18.    In particular, I know that cell phones connect to a provider's network through

14   cell towers or cell sites. The particular tower or site may change as a phone moves from

15   one location to another. Providers automatically record and retain this connection data as

16   part of the subject account. Records and data identifying the towers or sites to which a

17   phone connected therefore tend to identify the phone's and phone user's location at

18   particular times.

19        19.    In my training and experience, I have learned Verizon is a company that

20   provides cellular telephone access to the general public. I also know that providers of

21   cellular telephone service have technical capabilities that allow them to collect and

22   generate information about the locations of the cellular telephones to which they provide

23   service, including Cell Site Location Information (CSLI), also known as "tower/face

24   information" or "cell tower/sector records." CSLI data identifies the "cell towers" (i.e.,

25   antenna towers covering specific geographic areas) that received a radio signal from the

26   cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

27   telephone connected. These towers are often a half-mile or more apart, even in urban areas,

28   and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a

1  wireless device does not necessarily serve every call made to or from that device.

2  Accordingly, CSLI data provides an approximate location of the cellular telephone but is

3  typically less precise than other types of location information, such as E-911 Phase II data

4  or Global Positioning Device ("GPS") data.

5        20.    I also know that different providers use the speed with which signals travel

6  between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as

7  other data, to better calculate and record the location of phones accessing their networks.

8  Different providers may use different terminology to describe PCMD.  For example,

9  AT&T has referred to the resulting location information as "NELOS" data; Verizon, as

10  "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance"

11  data.  This application requests such per call measurement data (by whatever name the

12  provider uses) for the Account for the following date and time range: January 11, 2019 up

13  to and including February 11, 2019.

14        21.    Given these facts, I seek a warrant to search the Account for the records and

15  information in Attachment B.

16                    **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

17        22.    The United States is unaware at this time of other attempts by the U.S.

18  government to obtain this data by other means.[2]

19  //

20  //

21  

22  _____

    [2] On February 11, 2019, HSI agents manually reviewed the contents of Defendant's
    cellular phone pursuant to border search authority and took pictures of information

23  contained on Velasco's phone. On July 8, 2019, Magistrate Judge Gallo issued a search
    warrant to forensically search Defendant's cellular phone, which contained some call and

24  location data. Nothing from the February 11, 2019 manual review or July 8, 2019 search

25  warrant results are offered to support probable cause in this application. I also declare that
    nothing from the searches of Velasco's phone informs my decision to submit this affidavit

26  to obtain a search warrant for the location data. I seek this affidavit independent of any

27  information that was seen or reviewed (or not seen) in prior searches. I have also requested
    a subpoena for records associated with the Account from Verizon but have not received a

28  response and which would not provide all of the data requested by this warrant.

                                            7

## CONCLUSION

23.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24.    Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the Account to be seized, as set forth above and in Section I of Attachment B, will be found in the location described in Attachment A, and will contain evidence of violations of 21 U.S.C. §§ 952 and 960. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent, to order Verizon to search its corporate records for the Account and to order Verizon to deliver the Account listed in Attachment B.

Rainier Mendoza, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 13th day of December 2019.

Hon. Karen S. Crawford
United States Magistrate Judge

8

1

## ATTACHMENT A

2

### *Item to be Searched*

3   Verizon Wireless hosts the electronic communication account associated with the

4   telephone number (408) 599-4555 that is the subject of this search warrant and search

5   warrant application (the "Account").

6   Verizon Wireless is an electronic communication service provider whose primary

7   computer information systems and other electronic communications and storage systems,

8   records, and data are located at 180 Washington Valley Road, Bedminster, New Jersey

9   07921.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT B

### *Items to be Seized*

The officer executing the warrant shall permit Verizon, as custodian of the computer files described in Section I below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**I.     Items to be provided by the Provider**

Agents shall seize the following records, data, and information covering January 11, 2019 up to and including February 11, 2019 and maintained by the Provider for the subject account identified in Attachment A:

a. Subscriber information, including:
   i. Names;
   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
   iii. Local and long distance telephone connection records;
   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
   v. Length of service (including start date) and types of service utilized;
   vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
   vii. Other subscriber numbers or identities; and
   viii. Means and source of payment (including any credit card or bank account number) and billing records.

b. Records and other information about past wire or electronic communications sent or received by the subject account, including:
   i. the date and time of the communication;
   ii. the method of the communication;
   iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and

2

1

          iv.  Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications;

2

which are evidence of violations of 21 U.S.C. §§ 952 and 960, Importation of

3

Methamphetamine.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28